**JOHN R. CAMPO, ESQ. 020398**
**BRANSON, BRINKOP, GRIFFITH & CAMPO, LLP**
1221 E. Osborn Rd., Suite 102-A
Phoenix, AZ 85014
Telephone: (602) 812-3717
Facsimile: (602) 865-1984
E-mail: jcampo@bbgslaw.com

Attorneys for: Plaintiff, SPARTA Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PHOENIX COURTHOUSE

| | |
|---|---|
| SPARTA INSURANCE COMPANY AS SUCCESSOR TO QUANTA INDEMNITY COMPANY, fka QUANTA SPECIALTY LINES INSURANCE COMPANY,<br><br>Plaintiff,<br>vs.<br><br>HALL'S GENERAL CONTRACTOR, LLC; DOES 1-5; BLACK CORPORATIONS 1-5; and WHITE ENTITIES 1-5;<br><br>Defendants. | Case No:<br><br>COMPLAINT<br>(BREACH OF CONTRACT) |

COMES NOW Plaintiff SPARTA INSURANCE COMPANY as successor to QUANTA INDEMNITY COMPANY, fka QUANTA SPECIALTY LINES INSURANCE COMPANY ("SPARTA") and files this, its Original Complaint against Defendant HALL'S GENERAL CONTRACTOR, LLC ("HALL'S"), and in support of same would show as follows:

1

COMPLAINT (BREACH OF CONTRACT)

## PARTIES

1. Plaintiff was and is a Connecticut corporation with its principal place of business in Connecticut. Before its acquisition and change of name, Quanta was a Colorado Corporation that previously maintained its principal place of business in New Jersey.

2. Defendant HALL'S GENERAL CONTRACTOR, LLC (hereinafter "Defendant"), upon information and belief, is an Arizona Limited Liability Company with its principal place of business in Yuma County, Arizona and is, therefore, within the geographical jurisdiction of this Court.

## JURISDICTION AND VENUE

3. There is complete diversity of citizenship among and between the parties to this civil action, and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000). As such, jurisdiction in this judicial district exists pursuant to 28 U.S.C. §1332(A)(1).

4. Venue lies in this judicial district and division pursuant to 28 U.S.C. §1391(b)(1) because Defendant HALL'S resides in this District as "residency" is defined in 28 U.S.C. 1391 (c)(2).

## NAMES OF DEFENDANTS

5. Defendant HALL'S GENERAL CONTRACTOR, LLC is, on information and belief, an Arizona limited liability company. The true names and identities of Defendant DOE defendants, and BLACK and WHITE ENTITIES are currently unknown

2

COMPLAINT (BREACH OF CONTRACT)

to Plaintiff. Upon receipt of the proper name, Plaintiff will request leave of the Court to amend this Complaint, pursuant to A.R.C.P. 10(f).

## ALLEGATIONS

6. The Defendant, HALL'S GENERAL CONTRACTOR, LLC operates its business in Yuma County, Arizona and was the contractor that built a large, multi-family housing development identified as Ocotillo, that consisted of hundreds of single-family homes.

7. DOES 1-5, their respective spouses, BLACK CORPORATIONS and WHITE ENTITIES 1-5 are principals or agents of Defendant, and are either residents of Arizona, or are entities that are now, or were at all times relevant to this action, doing business in Arizona. The names of these Defendants are fictitious, as the true name is unknown to Plaintiff. Upon receipt of the proper name, Plaintiff will request leave of the Court to amend this Complaint, pursuant to A.R.C.P. 10(f).

8. Defendant was named as a defendant in 3 separate lawsuits filed in Yuma County, and which were commonly referred to as *Joseph Alva, et. al. v. Ocotillo Desert Development, LLC*, Yuma County Superior Court case number S1400CV201301018 ("*Alva*"); *Cesar and Elizabeth Acosta v. Ocotillo Desert Development, LLC,* Yuma County Superior Court case number S1400CV201300704 ("*Acosta*"); and *Jesus and Theresa Bravo v. Castle View Development, LLC*, Yuma County Superior Court case number S1400CV201301047 ("*Bravo*").

3

COMPLAINT (BREACH OF CONTRACT)

9. The plaintiffs in the *Alva* matter were the homeowners of 26 single-family residences located in the Ocotillo development in Yuma, AZ. One of the defendants in that matter was HALL'S GENERAL CONTRACTOR, LLC. The Prayer in the *Alva* complaint sought "damages according to proof thereof in excess of $100,000 per plaintiff."

10. The plaintiffs in the *Acosta* matter were the homeowners of 83 single-family residences also located in the Ocotillo development in Yuma, AZ. One of the defendants in that matter was HALL'S GENERAL CONTRACTOR, LLC. The Prayer in the *Acosta* complaint sought "damages according to proof thereof in excess of $100,000 per plaintiff."

11. The plaintiffs in the *Bravo* matter were the homeowners of 53 single-family residences located in the Castle View development in Yuma, AZ. One of the defendants in that matter was HALL'S GENERAL CONTRACTOR, LLC. The Prayer in the *Bravo* complaint sought "damages according to proof thereof in excess of $100,000 per plaintiff."

12. Defendant HALL'S GENERAL CONTRACTOR, LLC was the first named insured of the general liability policies that were issued by Plaintiff, SPARTA.

13. HALL'S GENERAL CONTRACTOR, LLC tendered its defense of the *Alva*, *Acosta* and *Bravo* lawsuits to SPARTA and other carriers, and HALL'S GENERAL CONTRACTOR, LLC demanded that SPARTA both defend and pay money to settle the homeowner claims that were being made in the *Alva*, *Acosta* and *Bravo* lawsuits.

4

COMPLAINT (BREACH OF CONTRACT)

14. The SPARTA policies included an endorsement that required HALL'S GENERAL CONTRACTOR, LLC to pay a self-insured retention for each claim made against it, and to satisfy the self-insured retention before any obligation would arise on the part of SPARTA to defend or indemnify HALL'S GENERAL CONTRACTOR, LLC.

15. SPARTA advised HALL'S GENERAL CONTRACTOR, LLC of its obligation to satisfy the self-insured retentions, at the time that SPARTA was asked to participate in the defense and indemnity of HALL'S GENERAL CONTRACTOR, LLC, and advised HALL'S GENERAL CONTRACTOR, LLC that any payments made by SPARTA would become the responsibility of HALL'S GENERAL CONTRACTOR, LLC to the extent made within the self-insured retention. This was stated in a letter to HALL'S GENERAL CONTRACTOR, LLC's counsel dated June 29, 2016. **Exhibit A.**

16. Notwithstanding the fact that HALL'S GENERAL CONTRACTOR, LLC was advised that it would be responsible for satisfaction of the $25,000 per-claim self-insured retentions, HALL'S GENERAL CONTRACTOR, LLC continued to demand that SPARTA pay to defend and settle the *Alva*, *Acosta* and *Bravo* claims.

17. The insuring agreement of the SPARTA policies states as follows:

//

//

//

//

5

COMPLAINT (BREACH OF CONTRACT)

1. *Insuring Agreement*

   **a**.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result, But:

   *(1)   The amount we will pay for damages is limited as described in Section **III** Limits Of Insurance; and*

   *(2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.*

   *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.*

   **b.**   This insurance applies to "bodily injury" and "property damage" only if:

   *(1)   The "bodily injury" or "property damage" is caused by an "occurrence that takes place in the "coverage territory";*

   *(2)   The "bodily injury" or "property damage" is caused by an "occurrence" which takes place during the policy period; and*

6

COMPLAINT (BREACH OF CONTRACT)

       *(3)*    *The "bodily injury" or "property damage" first takes place during the policy period. This does not include "bodily injury" or "property damage" which first takes place after the expiration of the policy period, regardless of when such "occurrence" giving rise to "bodily injury" or "property damage" takes place.*

  *c.*    *All "bodily injury" or "property damage" caused by or arising out of an "occurrence" is deemed to first take place at the earliest of when:*

       *(1)*    *Any "bodily injury" or "property damage" first becomes known to anyone; or*

       *(2)*    *It is alleged that any "bodily injury" or "property damage" first manifests; or*

       *(3)*    *Notification of the alleged existence of a potential or actual claim for any "bodily injury" or "property damage" is received by the insured, its employees, agents, subsidiary, related entity, subcontractor or representatives; or*

       *(4)*    *The insured, its employees, agents, subsidiary, related entity or representatives knew or should have known that any "bodily injury" or "property damage" has occurred; or*

       *(5)*    *Any "bodily injury" or "property damage" began.*

    *Regardless of whether the "bodily injury" or "property damage" results in additional related or unrelated claims, is continuous, progressive, repeated, changing or results from exposure to substantially the same general harm.*

  *d.*    *Damages for "bodily injury" includes damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."*

18. The coverage that was potentially available to an insured under the SPARTA policies was subject to a per-claim self-insured retention that states as follows:

//

//

//

//

7

COMPLAINT (BREACH OF CONTRACT)

### SELF-INSURED RETENTION

### Per Claim

*Self-Insured Retention*: $25,000   *Per Claim*

*Including Loss Adjustment Expense*

*In consideration of the premium charged, it is agreed the insurance afforded by the policy to which this endorsement is attached is subject to the following additional terms, conditions and provisions. In the event of a conflict between any of the terms, conditions or provisions of the policy and this endorsement, this endorsement will control the application of insurance to which the policy applies.*

*Unless otherwise specified, all terms used in this endorsement have the meaning set forth in the policy.*

1. The Self-Insured Retention, shown above, applies to each and every "claim" made against any insured, to which this insurance applies, regardless of how many claims arise from a single "occurrence" or are combined in a single "suit".

2. Our total liability will not exceed the Limits of Insurance as specified in the policy Declarations, Coverage Parts or endorsements. The Limits of Insurance will apply only in excess of the Self-Insured Retention, hereinafter referred to as the "Retained Limit."

3. We have no duty to defend or indemnify unless and until the amount of the "Retained Limit" is exhausted by payment of settlements, judgments, or "Claims Expense" by you.

4. Should any claim under this policy result in a settlement or judgment not exceeding the "Retained Limit," including "Claims Expense," then no "Claims Expense," damages or indemnity will be payable by us.

5. Should any claim arising under this policy result in a settlement or judgment, including "Claims Expense" incurred by the insured or on the insured's behalf, in excess of the "Retained Limit," we will pay those amounts in excess of the "Retained Limit" to which this insurance applies subject to the Limits of Insurance as specified in the Declarations.

6. The "Retained Limit" will only be reduced by payments made by the insured.

7. No "Claims Expense" will be incurred on our behalf without our prior consent, nor will the insured voluntarily enter into any settlement which is

8

COMPLAINT (BREACH OF CONTRACT)

*in whole or in part in excess of the "Retained Limit," without our express written approval.*

8. *Should any claim within the terms of the coverage be subject to a demand for settlement whether below the amount of the "Retained Limit," or in excess of it, and should the insured decline to settle such a claim or demand, or to tender the remainder of the "Retained Limit" to us, our maximum liability will be limited to the amount for which the claim could have been settled, but only for that portion of the settlement or judgment in excess of the "Retained Limit."*

9. *Based upon the unique nature of this program and the need to coordinate the warranty program with the general liability insurance program, the insured agrees to retain Bridgeworks Commercial Management as its self-insurance service company for the purposes of providing claims service at its expense. Bridgeworks Commercial Management will provide service and coordination for claims under the "Retained Limits" on behalf of the insured and under the control of the insured. However, this service will not be terminated or altered without our express written permission (or this policy will be declared null and void). The insured's agreement to enter into and abide by the terms and conditions of the contract with Bridgeworks Commercial Management, including payment and advance deposit of funds when a claim is reported, is a material representation under this policy.*

10. *Loss settlements made by the insured or its self-insurance service company, in excess of the "Retained Limit", will not be binding against us.*

11. *With respect to any claim payable under this insurance and subject in whole or in part to the "Retained Limit" as provided in this endorsement, we will have the right, but not the obligation to assume the control of said claim and to pay any part of or all of the amount of any such loss including "Claims Expense" within the "Retained Limit" on behalf of and for the account of the insured to affect settlement of said claim. Amounts paid by us pursuant to this paragraph will be reimbursed to us by the insured within ten (10) days from the date of our written request to the insured. We will have the right to make partial recoveries from the insured when partial settlements or "Claims Expense" are incurred by us within the "Retained Limit" as provided by this endorsement.*

12. *We will have the right, but not the duty, to defend any "suit." The insured will have the obligation to defend any claim or "suit" which may involve this coverage without respect to the "Retained Limit," and to settle same within the "Retained Limit" where possible. Said obligation to defend continues until the "Retained Limit" has been exhausted by settlements or*

9

COMPLAINT (BREACH OF CONTRACT)

> *"Claims expense;" or until written permission to discontinue said defense is granted by us.*
>
> 13. *For purposes of this endorsement, the term "Claims Expense" will include all fees, costs, charges and expenses generated by attorneys designated to represent the insured, and all other costs, charges and expenses incurred in the investigation, adjustment, settlement, arbitration, defense or appeal of any claim to which this insurance otherwise applies. "Claims Expense" will not include the cost of investigating or adjusting a claim by salaried employees of the insured, the insured's self-insurance service company, wages or salaries of any employee of any insured and/or operating expense of any insured.*
>
> 14. *The insolvency, bankruptcy, receivership of the insured, or any refusal by or inability of the insured to satisfy its obligations pursuant to this endorsement will not reduce the "Retained Limit" as set forth in the endorsement, nor will it require us to pay any amounts within the "Retained Limit." The payment of the "Retained limits" by the insured is a condition precedent for our obligation to pay any sums either in defense or indemnity and we shall not pay any such sums until and unless the insured has satisfied its "Retained limits".*
>
> 15. *The "Retained limits" shall not be exhausted or satisfied by any payments or claims expenses for damages that would not have been covered by the terms of this policy. The "Retained limits" shall not be utilized in response to any "claims" that are not otherwise covered by the terms and conditions of this policy.*

19. The *Alva*, *Acosta* and *Bravo* lawsuits were settled in or about February to March 2018. At that time, there were 122 remaining plaintiff-homeowner claims. HALL'S GENERAL CONTRACTOR, LLC requested that SPARTA pay and thereafter required that SPARTA pay, $127,875 on behalf of the HALL'S GENERAL CONTRACTOR, LLC to secure a release of 63 of the 122 remaining claims that represented homeowner claims that HALL'S GENERAL CONTRACTOR, LLC's other carriers refused to pay.

20. Leading up to the settlement, HALL'S GENERAL CONTRACTOR, LLC was kept apprised of the settlement amounts that would be required, and the fact that any

10

COMPLAINT (BREACH OF CONTRACT)

payment made by SPARTA would require reimbursement by HALL'S GENERAL CONTRACTOR, LLC to reimburse SPARTA the amount of the $25,000 per-claim self-insured retentions.

21. In addition to the amount that was paid by SPARTA to settle the 63 claims, SPARTA also paid a total of $275,022.24 toward the defense of HALL'S GENERAL CONTRACTOR, LLC in the *Alva*, *Acosta* and *Bravo* lawsuits.

22. After SPARTA made the payment of $127,875 to settle the claims of 63 of the 122 homeowners, and the *Alva*, *Acosta* and *Bravo* lawsuits were dismissed, SPARTA wrote to HALL'S GENERAL CONTRACTOR, LLC on or about June 25, 2018 and requested that HALL'S GENERAL CONTRACTOR, LLC reimburse SPARTA the amount owed as unsatisfied self-insured retentions that were owed for the defense and settlement of the homeowner claims. **Exhibit B.**

23. As stated in the June 25, 2018 letter, SPARTA calculated the amount owed as follows:

> As summarized above, there was no claim that exceeded the $25,000 per claim SIR. As such, the full settlement amount of $127,875 must be reimbursed to Quanta under the $25,000 per claim SIR's. With regard to the $275,022.24 that was spent in the defense of the 63 claims, it is also Quanta's position that no SIR had been satisfied, since the 63 claims spanned 3 separate lawsuits and required payments to be made as to each, under both Quanta policies due to the fact that the alleged damage to each

11

COMPLAINT (BREACH OF CONTRACT)

claimant's home occurred in different policy periods. As such, it is Quanta's position that this entire amount spent in the defense of these 63 claims is also owed in its entirety. However, as an accommodation, Quanta will limit its demand to $127,875 representing only the amounts paid in settlement of the 63 plaintiff claims. This is without waiver of Quanta's right to pursue the higher amount that is owed.

24. The June 25, 2018 letter requested reimbursement in the amount of $127,875, representing the amounts paid in settlement. HALL'S GENERAL CONTRACTOR, LLC never responded to the June 25, 2018 letter and has never paid any money to SPARTA in satisfaction of the amount owed pursuant to the policies.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

25. Plaintiff incorporates each of the allegations set forth above in paragraph 1-23 above, as if each was separately stated again here.

26. SPARTA has paid amounts under its policies that were within the per-claim self-insured retention, and were subject to application of the self-insured retention, and that required payment by, or reimbursement by, HALL'S GENERAL CONTRACTOR, LLC.

27. SPARTA participated in the defense of and settlement of the *Alva*, *Acosta*, and *Bravo* lawsuits, as was requested of it by HALL'S GENERAL CONTRACTOR, LLC, and satisfied its obligations to HALL'S GENERAL CONTRACTOR, LLC, as

12

COMPLAINT (BREACH OF CONTRACT)

required by the terms of the SPARTA policies.

28. SPARTA has made a written request to HALL'S GENERAL CONTRACTOR, LLC, as required by paragraph 11 of the Self-Insured Retention Endorsement, and waited at least 10 days for payment, as required in that endorsement.

29. HALL'S GENERAL CONTRACTOR, LLC has failed to respond to the demand for reimbursement, has failed to pay the amount requested, and has failed to pay any amount or provide any explanation to explain its refusal to pay.

30. The actions of HALL'S GENERAL CONTRACTOR, LLC as described above are a breach of HALL'S GENERAL CONTRACTOR, LLC written contractual obligations under the SPARTA policy(ies).

31. The breach by HALL'S GENERAL CONTRACTOR, LLC has caused damages to SPARTA in the amount of at least $402897.24, plus interest and attorney fees and costs.

32. Wherefore, Plaintiff prays for judgment as set forth below.

## **DEMAND FOR JUDGMENT**

WHEREFORE, plaintiff requests judgment against Defendants as follows:

A. Special Damages in the amount of $402897.24;

B. Attorneys' fees and costs pursuant to A.R.S. §12-341.01;

C. Interest on all amounts owed; and

//

COMPLAINT (BREACH OF CONTRACT)

D.  Such other and further relief as the Court deems just and proper under the circumstances.

DATED this 10th day of October, 2019.

BRANSON, BRINKOP, GRIFFITH & CAMPO, LLP


By: ___*/s/ John Robert Campo*___
    JOHN ROBERT CAMPO
    Attorney for Plaintiff

COMPLAINT (BREACH OF CONTRACT)